IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JOHN WINFIELD,

    Plaintiff,

v.

ELOXX PHARMACEUTICALS, INC.,
DAVID RECTOR, JAMES SCHMIDT,
BARRY HONIG, and DOES 1-10, inclusive,

    Defendants.

Civil Action No. 19-447-RGA

William R. Firth, III, CKR LAW LLP, Wilmington, DE; Michael James Maloney, FELICELLO LAW P.C., New York, NY, Attorneys for Plaintiff.

Kevin M. Gallagher, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; and Luke T. Cadigan, Elizabeth M. Wright, and Gemma Seidita, COOLEY LLP, Boston, MA, Attorneys for Defendants Eloxx Pharmaceuticals, Inc., David Rector, and James Schmidt.

David S. Eagle and Sean M. Brennecke, KLEHR HARRISON HARVEY BRANZBURG LLP, Wilmington, DE; and Robert D. Weber, SHEPPARD, MULLIN, RICHTER & HAMPTON LLP, Los Angeles, CA, Attorneys for Defendant Barry Honig.

March 23, 2020

/s/ Richard G. Andrews
**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the Report & Recommendation ("Report") of a United States Magistrate Judge. (D.I. 27). It addresses (1) the motion to dismiss for failure to state a claim under Rule 12(b)(6), filed by Defendants Eloxx Pharmaceuticals, Inc., David Rector, and James Schmidt (D.I. 8); and (2) the motion to dismiss for failure to state a claim under Rule 12(b)(6), filed by Defendant Barry Honig (D.I. 11). Defendants filed objections to the Report. (D.I. 28, 29). Plaintiff responded to Defendants' objections. (D.I. 31). The Magistrate Judge's Report is comprehensive, and I will adopt the factual findings and legal conclusions in the Report except as indicated. I do not separately recite any of them except as I think necessary to explain my decision.

## I.   LEGAL STANDARD

Magistrate Judges have the authority to make recommendations as to the appropriate resolution of a motion to dismiss pursuant to 28 U.S.C. § 636(b)(1)(B). In the event of an objection, this Court reviews the objected-to determinations *de novo*.

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual assumptions must be enough to raise a right to relief above the speculative level ... on the assumption that the allegations in the complaint are true (even if doubtful in fact)."). There must also be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility

2

standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)).

## II. DISCUSSION

### a. Breach of Contract

With regard to the breach of contract claim, which is against Eloxx, Defendants' first objection is to the Magistrate Judge's finding that the interpretation of "consent" and "amendment," as used in Section 2.2(g) of the Agreement, raises an issue inappropriate for resolution on a motion to dismiss. (D.I. 28 at 2). Defendants' second objection is that the Complaint does not sufficiently allege that the Company breached a contractual obligation set forth in the four corners of the contract. (*Id.* at 3). Defendants' third objection is to the Magistrate Judge's finding of a factual dispute about the term "closing." (*Id.*).

The Magistrate Judge offered a reasonable interpretation of the contract at issue, which Defendants contest. (D.I. 27 at 8). I agree with the determination of the plausibility of Plaintiff's position, under the terms of the Agreement, that the closing did not occur until Plaintiff tendered his stock certificate. Indeed, the relevant language of the Agreement appears to create an obligation that survives the date of closing. Since the parties' dispute appears to focus on the scope of Section 2.2(g) of the Agreement, and I agree that Plaintiff's interpretation is plausible, I agree with the Magistrate Judge that the issues of contract interpretation raised by Defendants cannot be resolved against Plaintiff on a motion to dismiss.

Thus, I overrule Defendants' objections and accept the recommendation to deny Defendants' motion as to the breach of contract claim.

### b. Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff does not adequately identify an implied contractual obligation and Plaintiff's cause of action for breach of the implied covenant is based on the same underlying facts as the cause of action for breach of the express terms of the Agreement. The Magistrate Judge so ruled, and there is no objection. I agree with the Report's recommendation and will grant the motion to dismiss Plaintiff's fifth cause of action for breach of the implied covenant of good faith and fair dealing.

### c. Securities Fraud Under Section 10(b) and Rule 10b-5

#### i. Misstatement or omission

Defendants contend that the Report erroneously recommends that the Complaint adequately pleads the falsity of Defendants' statements. (D.I. 27 at 15; citing D.I. 1 at ¶ 24). The Report states, 'The timing of Mr. Honig's conversion only a few weeks after Plaintiff's conversion gives rise to a strong inference that Defendants' statements regarding the most favorable conversion price were false at the time they were made." (*Id.*). Defendants state that this inference is based on the premise that the conversion did not occur until Plaintiff tendered his certificate and argue that instead, the conversion was complete as of the Closing on February 15, 2017. (D.I. 28 at 5).

As described at length in the Report, the facts alleged paint a different picture, one in which Defendants Rector and Honig failed to disclose or offer a lower conversion price to Plaintiff during a period in which Plaintiff's preferred shares had not yet been exchanged for

4

common shares. (D.I. 27 at 15-16). Thus, I overrule Defendants' objections as they relate to the involvement of Defendants Rector and Honig.

With regard to Defendant Schmidt, the Complaint states only that he "told Plaintiff that the other holder of the remaining series A preferred stock had reached an agreement and that those shares would be converted at the same price as in Plaintiff's agreement," before asking Plaintiff to tender his certificate. (D.I. 1 at ¶ 21). Plaintiff asserts that Defendant Schmidt's position as interim CFO, his knowledge of the Agreement provided to Plaintiff, his communication to Plaintiff, and his role in controlling the conversion prices offered to investors create a plausible inference that his involvement in the alleged misrepresentation was knowing or intentional. (D.I. 31 at 8-9). I do not find the facts alleged to be pleaded with sufficient particularity against Defendant Schmidt. It is possible that Defendant Schmidt conveyed the described message to Plaintiff based on what Defendants Rector or Honig told him, for example. Plaintiff makes no allegation that Defendant Schmidt knew, at the time that he spoke with Plaintiff, that nearly two months later Defendant Honig would have a better deal. Thus, I will grant Defendants' motion to dismiss the securities fraud claim under Section 10(b) and Rule 10b-5 as they pertain to Defendant Schmidt. If Plaintiff is able to, he may amend his claims as to Defendant Schmidt.

### ii. Scienter

Defendants state that there is no factual support for the Report's conclusion that Plaintiffs allegations give rise to a "strong inference" of Defendants' knowledge that the $0.10 conversion price "would be given to Mr. Honig soon after Plaintiff tendered his stock certificate," in violation of the Agreement. (D.I. 28 at 6). Defendants argue that the allegations in the Complaint do not support the conclusion that Defendants Rector and Schmidt had any motive to commit

5

fraud or engage in "conscious misbehavior or recklessness." (*Id.*). Defendant Honig objects to the Report's recommendation because he 'did not own any Series A preferred stock until after he spoke with Plaintiff" and Plaintiff executed the Agreement. (D.I. 29 at 7).

The Report references specific sentences in the Complaint which identify each individual Defendant's role in a coordinated campaign to persuade Plaintiff to tender his stock certificate by representing that the $0.25 per share conversion price was the best available, thereby finding that Plaintiff has pleaded with the particularity required under the PSLRA. (D.I. 27 at 18-20; citing D.I. 1 at ¶¶ 10, 14-15, 18, 21). As previously discussed, I do not find the single statement describing Defendant Schmidt's role in the alleged campaign to be pleaded with sufficient particularity to survive a motion to dismiss. (*See* D.I. 1 at ¶ 21). The Report recognizes that failing to disclose the next round of funding, conditioned upon conversion of Plaintiff's shares, would negatively impact the value of the individual Defendants' personal holdings, providing the Defendants with motive to engage in fraud. (D.I. 27 at 17-20; *see also* D.I. 20 at 17). I do not see any allegation in the Complaint about any amount of Rector's and Schmidt's personal holdings at any time. As to Defendant Honig, Plaintiff's allegation that he acted as the "current lead investor' coordinating the conversion of shares in order to close the financing also establishes an inference of scienter.

I agree with the Magistrate Judge that, taken as a whole, Plaintiff's allegations give rise to an inference that Defendants Rector and Honig engaged in a coordinated effort to pressure Plaintiff into converting his shares at a higher conversion price than that which was given to convertible noteholders and later, Defendant Honig. Defendants' objections are overruled.

6

### iii. Justifiable reliance

Defendants object to the Magistrate Judge's finding that the Complaint adequately pleads justifiable reliance by Plaintiff on Defendants' representations regarding the conversion price at the time he tendered his stock certificate. (D.I. 28 at 7). Defendants argue that the transaction was completed in February 2017, "months before Plaintiff tendered his certificate," and thus Plaintiff's tendering of his stock certificate is not the relevant time. (*Id.*).

The Magistrate Judge found that the Complaint alleges sufficient facts establishing that Plaintiff agreed to convert his shares at $0.25 per share only after receiving certain assurances, and that Plaintiff subsequently learned that the remaining preferred shares had been converted at a lower price. (D.I. 27 at 21-22; citing D.I. 1 at ¶¶ 21-24). Had Plaintiff known Defendant Honig was offered a lower conversion price, he would have insisted on the same or would not have exchanged his shares. (D.I. 1 at ¶ 41). Plaintiff's allegations appear to be consistent with his understanding of Section 2.2(g) of the Agreement, which allegedly promised that Plaintiff would receive the most favorable conversion price.

I agree that the Complaint adequately pleads that Plaintiff justifiably relied on Defendants' representations regarding the conversion price when he tendered his stock certificate, as he alleges that is during the relevant time. Therefore, I will overrule Defendants' objections regarding justifiable reliance.

In sum, I will deny Defendants' motion to dismiss Plaintiff's cause of action for securities fraud under Section 10(b) and Rule 10b-5 as to Defendants Rector and Honig and grant as to Defendant Schmidt.

### d. Common Law Fraud

Defendants argue that in finding that the Complaint alleges sufficiently particularized facts establishing that, at the time the representations were made, Defendants had no intention of performing under the terms of the agreement, the Report fails to consider an alternative scenario in which the Agreement represented only a "one-time" transaction and a $0.25 conversion price. (D.I. 28 at 7-8). Defendants also assert that because Plaintiff seeks identical damages for both the fraud and breach of contract claims, the Court should dismiss the fraud claim as duplicative of the breach of contract claim. (*Id.* at 8).

Plaintiff adequately alleges the requisite misrepresentation, state of mind, and reasonable reliance to sustain a cause of action for common law fraud. Moreover, because Plaintiff seeks exemplary and punitive damages as a remedy for the common law fraud claim, Plaintiff's damages claims for breach of contract and common law fraud are not necessarily duplicative. The Report distinguishes the instant case from *Heritage Handoff Holdings, LLC v. Fontanella*, in which the plaintiff sought damages as a direct and proximate result of the alleged fraud and punitive damages "[i]n addition" to those damages. (D.I. 27 at 26-27; citing 2019 WL 1056270 (D. Del. Mar. 6, 2019)). I note that *Fontanella* was a post-trial decision, not a pleading decision, and I do not think it controls at this time. If, later, the common law fraud claim is determined to be duplicative of the breach of contract claim, I will be able to address that issue then.

Defendant Honig argues that the Complaint fails to state a cause of action for common law fraud against him because he did not own any Series A preferred shares until August 2017, which was after his conversations with Plaintiff. (D.I. 29 at 6). Defendant Honig contends that there are no particularized facts sufficient to infer that he intended to break the alleged promises made in the earlier conversations. (*Id.*)

8

Regardless of whether Defendant Honig acquired shares only after August 2017, the inference that his statements regarding the most favorable conversion price were false at the time they were made still stands. Assuming the truth of the allegations that he had a close relationship with OPKO, that he was the "current lead investor," and that he engaged in a pattern of communications with Plaintiff designed to pressure Plaintiff to tender his certificate, these facts are sufficient to state a valid cause of action for common law fraud.

Thus, I overrule Defendants' objections and deny Defendants' motion to dismiss Plaintiff's cause of action for common law fraud as to Defendants Rector and Honig For the reasons stated, *supra* at II(c)(i), I will grant Defendants' motion to dismiss the common law fraud claim as they pertain to Defendant Schmidt.

### e. Section 20(a)

Defendants object to the Magistrate Judge's ruling on control person liability, asserting that there is no particularized factual support for how Defendants Rector and Schmidt exercised control over Defendant Honig. (D.I. 28 at 8). Defendant Honig argues that the Complaint does not allege particularized facts establishing his control over the Company or its officers.

The Magistrate Judge found that the Complaint alleges that Defendants Rector and Schmidt exercised control over the terms of conversion offered to preferred shareholders in their capacities as CEO and CFO, respectively. (D.I. 27 at 29; citing D.I. 20 at 22). Moreover, Plaintiff alleges that Defendant Honig exercised control as the "lead investor" of the Company. (*Id.*). As such, he was directly involved in efforts to convert all outstanding series A preferred shares to common stock and possessed the power to influence the conversion prices offered to Plaintiff and other investors.

9

For control person liability claims, the plaintiff must simply prove that one person controlled another person or entity and that the controlled person or entity committed a primary violation of the securities laws. *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 284 (3d Cir. 2006). There is no requirement that Defendant Honig be an Eloxx officer, director, or insider or be responsible for Eloxx's operations. (*See* D.I. 29 at 9). I agree that Defendant Rector's role, combined with the Complaint's particularized allegations that he actively coordinated the merger transaction and conversion of series A preferred shares to common stock, is sufficient to state a claim under Section 20(a). The Complaint further states facts showing that Defendant Honig directly pressured Plaintiff to tender his stock certificate with the knowledge and support of at least Defendant Rector. (*Id.* at ¶¶ 9-10, 14-15, 18). The Complaint adequately alleges that Defendants Rector and Honig exercised control over the company and I agree that these factual allegations are sufficiently detailed to satisfy the particularity standard for a cause of action under Section 20(a). Therefore, I overrule Defendants' objections and deny Defendants' motions to dismiss Plaintiff's cause of action under Section 20(a) as they pertain to Defendants Rector and Honig. Because I have not found that Plaintiff has sufficiently pleaded control as to Defendant Schmidt, I will grant the motion to dismiss Plaintiff's cause of action under Section 20(a) as to Defendant Schmidt.

### III.  CONCLUSION

For the reasons discussed above, I will adopt the Magistrate Judge's Report and grant-in-part the motion to dismiss filed by Eloxx, Defendant Rector, and Defendant Schmidt, and deny the motion to dismiss filed by Defendant Honig. An accompanying order will be entered.